# In the United States Court of Federal Claims

No. 16-1011

Filed: May 20, 2024

|  |  |
|---|---|
| ESTATE OF ALBERT P. SCHULTZ | ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) ) |
| *Defendant*. | ) ) |

*Alexander Schultz*, Lake Worth, FL, for Plaintiff.

*Anne Delmare*, Trial Attorney, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., with whom were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, *Elizabeth M. Hosford*, Assistant Director, and *Michael F. Kiely*, Office of General Counsel United States Postal Service, *of counsel*.

## OPINION AND ORDER

**MEYERS, Judge**.

In 1990, Albert Schultz began a legal odyssey. What began as a disability claim has spawned litigation in two administrative agencies, one district court, two circuit courts, and now this court. Cases have been closed only to be reopened a few years later and then closed again. Some have been reopened yet again. They have been merged and severed along the way.

Following a settlement agreement in 2004, matters shifted mostly to disputes over attorney's fees. In 2009, the Third Circuit hoped its decision would result in an end to this "interminable case" that had—at *that* point—"already overworked the judiciary." *Est. of Schultz v. Potter*, 349 F. App'x 712, 717-19 (3d Cir. 2009). Fifteen years later, the parties are still fighting. This case is one of the attorney fee disputes involving alleged breaches of the 2004 settlement agreement—"a mere bud on the forest tree of the parent suit . . . ." CHARLES DICKENS, BLEAK HOUSE 7 (Wordsworth ed. 2001) (1852).

The United States moves to dismiss under 28 U.S.C. § 1500, which divests this court of jurisdiction over any claims when a plaintiff has a case pending in another court respecting those same claims. Because the Plaintiff had such a case pending in the Third Circuit when it filed its complaint here, Section 1500 divests this court of jurisdiction. Therefore, the court grants the Government's motion to dismiss this case for lack of subject matter jurisdiction.

I.      **Background**

Because this case focuses on a narrow issue, the court does not attempt to recite the entire history of this case, which is far too complex to recount here.[1]  Rather, this court focuses on the background that is at issue now.

A.      **The district and circuit court litigation.**

In 1990, Albert P. Schultz, then an employee of the U.S. Postal Service, filed a "discrimination complaint for failure to accommodate a disability, causing a 'constructive suspension' with the USPS EEO office . . . ." ECF No. 1 ¶ 5.  The Merit Systems Protection Board ("MSPB") and the Equal Employment Opportunity Commission ("EEOC") both found Mr. Schultz's removal was discriminatory and that he was entitled to backpay.  ECF No. 1 ¶¶ 5-14.  Numerous cases in the district and circuit courts followed, during which Mr. Schultz passed away.  ECF No. 1 ¶ 13.  His widow, Bonnie, became the personal representative of The Estate of Schultz and has continued the litigation.

After the MSPB and EEOC decisions, Plaintiff filed multiple petitions for backpay, benefits, and attorney's fees, including an enforcement petition at the MSPB for payment of backpay and benefits for the time after Mr. Schultz's discriminatory removal.  ECF No. 1 ¶ 15, 22.  The USPS argued that this enforcement petition was untimely.  ECF No. 1 ¶ 22.  While the enforcement petition was pending at the MSPB, the Plaintiff and USPS entered settlement discussions.  The parties entered into a settlement agreement on May 12, 2004, ECF No. 1 ¶ 17, which the MSPB approved on June 1, 2004.  ECF No. 1 ¶19.

The 2004 settlement agreement "identified in great detail" the backpay, benefits, and attorney's fees "related to the removal[,]" and the USPS agreed to pay the Plaintiff "backpay and attorney's fees related to the period prior to the . . . illegal removal, and all attorney's fees relating to the failure to accommodate discrimination issue . . . ." ECF No. 1 ¶ 17.  The agreement also granted Plaintiff "the right to seek the merits level removal fees," contingent upon prevailing on the pending enforcement petition's timeliness issue and receiving the payment of backpay and benefits for the time after the discriminatory removal.  ECF No. 1 ¶ 20.  In conjunction with this provision, the parties also identified the hours for attorney work on the merits level discriminatory removal action.  ECF No. 1 ¶ 16.  The agreement states:

> The parties have not reached agreement as to attorney fees and costs that could be payable for litigation related to the removal but have identified . . . those hours which may be subject to being paid.  Should the appellant's petition for enforcement related to back pay for the period after [the removal date] be found to have been timely, the parties anticipate that a calculation of additional fees relating specifically to the removal action that was reversed by the Board will be agreed to . . . .  In the event the parties are unable to

---

[1] The detailed history of this case is presented many times in the prior decisions in the various agencies, district court, and circuit courts.  Nearly 30 of these decisions are included in an appendix to the Government's motion, which appears at ECF No. 46-1.

> agree on any remaining attorney's fees or costs, then appellant would be permitted to file another petition for enforcement solely on this issue, and the issue of fees and costs for work on this enforcement proceeding. A petition for enforcement could also be filed to enforce this agreement.

ECF No. 1-2 at 3-4. The MSPB's order approving the settlement agreement likewise stated: "If the pending enforcement proceedings are adjudicated in the appellant's favor, Attorney Schultz[2] may file an appropriate motion for attorney fees after the enforcement decision becomes final." ECF No. 1-3 at 2.

In September 2004, an MSPB administrative judge dismissed Plaintiff's enforcement petition as untimely. ECF No. 1 ¶ 22. After extensive litigation over this issue in front of the MSPB, the Western District of Pennsylvania, and the Third Circuit, Plaintiff prevailed. ECF No. 1 ¶¶ 23-30. Plaintiff then "protectively filed petitions for [attorney's] fees before the MSPB on July 12, and 14, 2010" for the merits level removal work. ECF No. 1 ¶ 33. The USPS filed objections to Plaintiff's fee petition, which the Estate argued prevented it from seeking fees in violation of the settlement agreement. Plaintiff then filed a motion to enforce the settlement agreement at the MSPB. ECF No. 1 ¶¶ 34-38. Litigation concerning the fee petition and the motion to enforce the settlement agreement continued until 2012 when the MSPB dismissed the matter. ECF No. 1 ¶¶ 39-46.

Then in 2013, Plaintiff filed an appeal of an MSPB decision ("the 2013 Case") in the Federal Circuit. The Federal Circuit, however, transferred the case to the Western District of Pennsylvania because Plaintiff's appeal "stem[med] from a mixed case," a case that in part "was based on discrimination," and Supreme Court precedent requires a federal employee to "seek judicial review in district court . . . when he claims that an agency action violates an antidiscrimination statute." Order of Transfer of Appeal, *Schultz v. MSPB*, No. 12-3142 (Fed. Cir. Sept. 17, 2013), ECF No. 34 (cleaned up). In the 2013 Case, Plaintiff alleged three counts: 1) a petition for the court to review the 2012 MSPB order dismissing Plaintiff's motion to enforce the settlement agreement, 2) breach of the settlement agreement by the USPS, and 3) a claim that the MSPB's practices denied Plaintiff the required procedures and due process. Sec. Am. Compl. ¶¶ 1, 107, 130-202, *Schultz v. MSPB*, No. 13-1363 (W.D. Pa. Mar. 7, 2014), ECF No. 35.

In August 2014, the Federal Circuit transferred another case filed by the Plaintiff to the Western District of Pennsylvania (the "2014 Case"). Transfer Order, *Schultz v. MSPB*, No. 14-3120 (Fed. Cir. Aug. 26, 2014), ECF No. 19. In this case, Plaintiff appealed an MSPB order dismissing Plaintiff's petition for additional attorney's fees allegedly owed under the settlement agreement. *Id.* The 2013 Case and 2014 Case were consolidated in December 2014, because the district court found that both sought the same attorney's fees based on the same underlying case—the 2014 Case was thereby dismissed. Mem. Order, *Schultz v. MSPB*, No. 13-1363 (W.D. Pa. Dec. 11, 2014), ECF No. 76; Mem. Order, *Schultz v. MSPB*, No. 14-1159 (W.D. Pa. Dec. 11, 2014), ECF No. 21. Plaintiff filed a motion for reconsideration in both cases, and the respective

---

[2] Attorney Schultz refers to Alexander Schultz, Plaintiff's attorney, who is Albert and Bonnie's son.

courts denied the motions. Order, *Schultz v. MSPB*, No. 13-1363 (W.D. Pa. Jan. 22, 2015), ECF No. 81; Order, *Schultz v. MSPB*, No. 14-1159 (W.D. Pa. Jan. 22, 2015). On March 23, 2015, in the 2014 Case, Plaintiff appealed the denial of the motion for reconsideration. Notice of Appeal, *Schultz v. MSPB*, No. 14-1159 (W.D. Pa. Mar. 23, 2015), ECF No. 23. The district court entered judgment in the 2013 Case on March 31, 2015. Order, *Schultz v. MSPB*, No. 13-1363 (W.D. Pa. Mar. 31, 2015), ECF No. 84. Specifically, the district court granted in part the Government Defendant's motion to dismiss and for summary judgment: remanding Count I in part to the MSPB, and dismissing Counts II and III of the Complaint, Op. at 12, *Schultz v. MSPB*, No. 13-1363 (W.D. Pa. Mar. 31, 2015), ECF No. 82—Count II being the "protective action for breach of the Settlement Agreement between the parties." Second Am. Compl. ¶ 107, *Schultz v. MSPB*, No. 13-1363 (W.D. Pa. Mar. 7, 2014), ECF No. 35.

      **B.**      **Plaintiff's litigation in this court.**

Plaintiff filed this case on August 15, 2016. Plaintiff alleges the USPS breached the 2004 settlement agreement by objecting to Plaintiff's petition for enforcement to obtain attorney's fees and petition for enforcement of the settlement agreement. ECF No. 1. ¶¶ 47-55. A few months later, on November 4, 2016, the Third Circuit dismissed Plaintiff's appeal of the 2014 Case. *Est. of Schultz v. MSPB*, 671 F. App'x 848, 851 (3d Cir. 2016). Soon after, the Government filed an unopposed motion to stay the case in this court, ECF No. 10, which this court granted on December 22, 2016. ECF No. 11. Then, on September 25, 2017, Plaintiff filed another action in the Western District of Pennsylvania ("the 2017 Case"). Compl., *Est. of Schultz v. Brennan*, No. 17-1320 (W.D. Pa. Sept. 25, 2017), ECF No. 1. This case challenged a 2017 EEOC Order that concurred with an MSPB Order determining what attorney's fees and costs related to the removal Plaintiff was entitled to. *Id.*

Roughly six years later, in September 2023, the Government filed a motion to dismiss the case in this court pursuant to RCFC 12(b)(1). ECF No. 46. After briefing concluded, the court lifted the stay on October 26, 2023. ECF No. 49. Oral Argument took place on January 16, 2024. ECF No. 54.

**II.**      **Motion to Disqualify**

Before turning to the motion to dismiss, the court addresses a motion to disqualify the Department of Justice from representing the United States in this case. According to the Plaintiff, "[a]s the main defender of the rule of law and the Constitution . . . the Department of Justice has an inherent conflict of interest when it represents a Federal agency that is sued." ECF No. 50 at 1. Because of this, Plaintiff asserts, Federal agencies have "become weaponized against the citizens of the United States . . . ." ECF No. 50 at 2.

Congress has decided that it is the DOJ's duty to defend the United States in litigation. Pursuant to 28 U.S.C. § 516, "[e]xcept as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General." Because the Government is always the defendant in this court, it is DOJ's duty to defend against allegations in this court. This is not a conflict of interest. Taking Plaintiff's argument to its logical end, the DOJ would be conflicted from every case brought in

this court. Of course, simply defending the United States against allegations is not enough to disqualify counsel in this case. In fact, the DOJ is not even challenging the allegations in the complaint. The United States is arguing a jurisdictional bar to the case being heard in this court.

Nor is it lost on the court that Plaintiff filed its "emergency" motion to disqualify the DOJ on a Sunday, two days before argument on the motion to dismiss that was held on the following Tuesday (the intervening Monday was a federal holiday), even though this case has been pending for years. Such late filing may suffice on its own as a reason to deny the motion. *E.g.*, *Bayside Fed. Sav. & Loan Ass'n v. United States*, 57 Fed. Cl. 18, 21-22 (2003) ("[T]he fact that the government waited over nine years . . . to file a disqualification motion presents further justification for denying the government's request."); *Redd v. Shell Oil Co.*, 518 F.2d 311, 315 (10th Cir. 1975) ("We consider it unnecessary, as we have previously indicated, to review the trial court's findings as to the inadequacy of Graney's basis for attempting to disqualify the Berman firm. The late filing [on the Friday before a Monday trial] fully justified the summary rejection of the motion."); *Cent. Milk Producers Co-op. v. Sentry Food Stores, Inc.*, 573 F.2d 988, 992 (8th Cir. 1978) ("A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion."); *Cox v. Am. Cast Iron Pipe Co.*, 847 F.2d 725, 729 (11th Cir. 1988) ("[A] failure to make a timely [disqualification] objection may also result in a waiver.").

Putting aside the timing of the Plaintiff's motion, the motion fails to present any basis to disqualify the DOJ from this case. Plaintiff's motion does not claim the DOJ has done anything improper in this case or before this court; rather, Plaintiff's motion generally complains about the Government's conduct over the last few decades in other matters. At the outset of oral argument, Plaintiff conceded that Ms. Delmare, the DOJ counsel litigating this case, has done nothing wrong: "she's been very reputable, ethical. I can't say anything negative about her." ECF No. 54 at 5:2-3. Thus, Plaintiff asserts no basis to disqualify counsel. *Favell v. United States*, 27 Fed. Cl. 724, 731 (Cl. Ct. 1992) ("Therefore, upon careful study of [plaintiff's] motions which seek to disqualify the entire United States Department of Justice, the court has concluded that the unsupported allegations made . . . do not even allege facts sufficient to require additional fact-finding by the court and can be disposed of at this time without holding a hearing on those allegations.").

Accordingly, Plaintiff's motion to disqualify the DOJ is denied.

**III.    Motion to Dismiss**

    **A.    Standard of Review.**

When deciding a Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction, the court construes the allegations of the complaint in the light most favorable to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814–15 (1982). The court "must accept as true all undisputed facts asserted in the plaintiff's complaint . . . ." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995)). But the court may also consider "matters incorporated by reference or integral to the claim, items

subject to judicial notice, and matters of public record." *A&D Auto Sales, Inc.*, 748 F.3d at 1147 (cleaned up).

Subject matter jurisdiction over a case is a threshold matter. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). This court has an independent duty to determine whether subject matter jurisdiction exists "even *sua sponte*, whenever those issues come to the court's attention." *St. Bernard Par. Gov't v. United States*, 916 F.3d 987, 992–93 (Fed. Cir. 2019). The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Brandt v. United States*, 710 F.3d 1369, 1373 (Fed. Cir. 2013). And if the court determines that it lacks subject matter jurisdiction, it must dismiss the case. RCFC 12(h)(3).

### B. Section 1500's framework.

The Government moves to dismiss under 28 U.S.C. § 1500, which removes this court's jurisdiction over the Plaintiff's case. ECF No. 46. Section 1500 provides that the "Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff . . . has pending in any other court any suit or process against the United States . . . ." 28 U.S.C. § 1500. Section 1500 removes jurisdiction "over a claim if the plaintiff has another suit for or in respect to that claim pending against the United States . . . ." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 311 (2011); *see also Brandt*, 710 F.3d at 1373 (same).

Congress first enacted Section 1500 "to curb duplicate lawsuits brought by" the cotton claimants. *Tohono*, 563 U.S. at 311. The cotton claimants were "residents of the Confederacy following the Civil War . . . named for their suits to recover for cotton taken by the Federal Government . . . ." *Id*. These claimants proved problematic because they sought "relief for the same alleged actions" in the Court of Claims under the Abandoned Property Collection Act, 12 Stat. 820, and in other courts under theories sounding in tort. *Id*. at 311–12. This resulted in duplicative and redundant litigation for the Federal Government. *Id*. Section 1500's "purpose is clear from its origins with the cotton claimants—the need to save the Government from burdens of redundant litigation—and that purpose is no less significant today." *Id*. at 315.

To determine whether Section 1500 removes jurisdiction, the court must determine: "(1) whether there is an earlier-filed 'suit or process' pending in another court, and, if so, (2) whether the claims asserted in the earlier-filed case are 'for or in respect to' the same claim(s) asserted in the later-filed Court of Federal Claims action." *Brandt*, 710 F.3d at 1374 (cleaned up). If the answer to both steps of the inquiry is affirmative, then this court does not have jurisdiction. *Id*.

#### 1. When Plaintiff filed its complaint, it had another suit or process pending in the Third Circuit.

The first step of the inquiry requires the court to determine whether the Plaintiff had an earlier-filed pending suit. Whether a suit "is 'pending' for § 1500 purposes is determined at the time the complaint is filed with the Court of Federal Claims." *Brandt*, 710 F.3d at 1375 (citing *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993)). Thus, the court must examine whether the Plaintiff had any suits against the United States pending on the date plaintiff filed its complaint in this court. "Pending" is interpreted according to the plain meaning ascribed to the

word, "[r]emaining undecided; awaiting decision . . . ." *Brandt*, 710 F.3d at 1378 (citing *Black's Law Dictionary* 1248 (9th ed. 2009)); *Ensign-Bickford Aerospace & Def. Co. v. United States*, 118 Fed. Cl. 363, 371 (2014). Therefore, if a prior "claim is dismissed or denied" before the Plaintiff filed in this court, "it is no longer 'pending' for § 1500 purposes until a motion for reconsideration or notice of appeal is filed." *Brandt*, 710 F.3d at 1379–80. And "governing precedent establishes that [a] later-filed district court action d[oes] not deprive the Court of Federal Claims of jurisdiction . . . ." *Hardwick Bros. Co. II v. United States*, 72 F.3d 883, 884 (Fed. Cir. 1995)).

The focus of the analysis on only the moment of the filing of a complaint in this court has led many to criticize the application of Section 1500 as promoting nothing but gamesmanship. *E.g.*, MATTHEW H. SOLOMSON, COURT OF FEDERAL CLAIMS: JURISDICTION, PRACTICE, AND PROCEDURE 21-19 (2016) ("[A] party may escape dismissal under Section 1500 if that party files first in the COFC and only then in another court—those safe harbors only reinforce an abiding sense that Section 1500 rewards gamesmanship."). Although the Supreme Court was skeptical of precedents that "suppress[ed] the statute's aims" or rendered Section 1500 "nugatory," the timing question was not before the Supreme Court in *Tohono O'Odham*. *Tohono*, 563 U.S. at 315. In the end, Section 1500 and its focus on the timing of filings remain on the books and this court must follow it. *E.g.*, *Def. Distributed & Second Amend. Found. v. United States*, No. 23-849, 2024 WL 1092509, at *2 (Fed. Cl. Mar. 13, 2024) ("This provision has been roundly criticized as unnecessary and a trap for the unwary, but it survives.").

The Government argues that when Plaintiff filed its complaint here, it "had a suit 'for or in respect to' the claim asserted in this case pending against the United States in United States District Court for the Western District of Pennsylvania." ECF No. 46 at 14. The Government contends that this pre-existing pending claim was in "Case No. 3:13-cv-01363-ANB, later consolidated with Case No. 2:17-cv-01320-ANB" and cites to the Plaintiff's complaints in these cases. ECF No. 46 at 17–18. Plaintiff does not exactly address the "pending" prong of the Government's Section 1500 argument, but highlights "Judge Bloch's decision of March 31, 2015," in the 2013 Case that dismissed Plaintiff's breach of settlement agreement claim. ECF No. 47 at 7.

Again, whether an earlier-filed suit is pending for Section 1500 purposes "is determined at the time the complaint is filed with the Court of Federal Claims." *Brandt*, 710 F.3d at 1375 (citation omitted). Therefore, the key date for this Section 1500 analysis is August 15, 2016, the date Plaintiff filed this case. All that matters are what suits or processes Plaintiff had pending on that date. Accordingly, the 2017 Case is irrelevant because the complaint was filed in September 2017, *after* August 15, 2016. The Government's contention that the complaint from the 2013 Case was pending is also incorrect—the district court entered judgment in the 2013 Case on March 31, 2015, Order, *Schultz v. MSPB*, No. 13-1363 (W.D. Pa. Mar. 31, 2015), ECF No. 84, dismissing the allegedly related claim for breach of the settlement agreement. Op. at 12, *Schultz v. MSPB*, No. 13-1363 (W.D. Pa. Mar. 31, 2015), ECF No. 82. Thus, the 2013 Case was not pending as of August 15, 2016, because "once a claim is dismissed or denied, it is no longer 'pending' for § 1500 purposes . . . ." *Brandt*, 710 F.3d at 1379–80.

There was, however, a pending claim at the time Plaintiff filed its complaint here in August 2015; it had a pending appeal against the United States in the Third Circuit. Plaintiff

7

filed the notice of appeal on March 23, 2015, and the appeal was not resolved until November 4, 2016.  Notice of Appeal, *Schultz v. MSPB*, No. 14-1159 (W.D. Pa. Mar. 23, 2015), ECF No. 23; *Est. of Schultz*, 671 F. App'x at 851.  A notice of appeal initiates the action in the circuit court, which is a pending suit or process for Section 1500 purposes.  *Brandt* explains that "once a claim is dismissed or denied, it is no longer 'pending' for § 1500 purposes *until* a motion for reconsideration or notice of appeal is filed."  *Brandt*, 710 F.3d at 1379–80 (emphasis added).  And in *Hood v. United States*, the Federal Circuit likewise held a pending appeal was a pending suit for purposes of Section 1500:

> Hood filed suit in the Western District of Michigan in October 2014.  After the district court dismissed his claims, Hood filed an appeal in . . . the Sixth Circuit on August 12, 2015.  That appeal was still pending . . . when Hood filed his complaint . . . with the Court of Federal Claims . . . .  Accordingly, there was an earlier-filed suit pending in the Sixth Circuit when Hood filed his complaint below.

*Hood v. United States*, 659 F. App'x 655, 660-61 (Fed. Cir. 2016).  Therefore, the Plaintiff had a suit or process pending in the Third Circuit on August 15, 2016, when Plaintiff filed its complaint here.  The first step of the Section 1500 inquiry is satisfied.

### 2. Plaintiff's pending suit was for or in respect to the claim before this court.

If Plaintiff has or had an earlier-filed pending suit, the court must determine whether the suit is for or in respect to the same claim as the Plaintiff's suit in this court.  Under Section 1500, "[t]wo suits are for or in respect to the same claim . . . if they are based on substantially the same operative facts . . . ."  *Tohono*, 563 U.S. at 317.  Both the relief sought, *id.*, and "the legal theories underlying the asserted claims are irrelevant to this inquiry."  *Brandt*, 710 F.3d at 1374 (cleaned up).  This is because of the unique nature of this court's jurisdiction and the purpose underlying Section 1500.  As the Supreme Court explained in *Tohono*:

> Reading the statute to require only factual and not also remedial overlap makes sense in light of the unique remedial powers of the CFC.  The CFC is the only judicial forum for most nontort requests for significant monetary relief against the United States.  Unlike the district courts, however, the CFC has no general power to provide equitable relief against the Government or its officers . . . .  Remedial overlap between CFC suits and those in other courts was even less common then than now.  If the statute were to require remedial as well as factual overlap, it would have had very limited application in 1868 despite its broad language that bars not only identical but also related claims.  The rule in § 1500 effects a significant jurisdictional limitation, and Congress reenacted it even as changes in the structure of the courts made suits on the same facts more likely to arise.  Doing so reaffirmed the force of the bar and thus the commitment to curtailing redundant litigation.

*Tohono*, 563 U.S. at 313–14 (cleaned up).  Thus, the analysis "focus[es] only on whether two claims share the same operative facts" when deciding this step of the Section 1500 inquiry. *Trusted Integration, Inc.*, 659 F.3d at 1164.

"In determining whether two suits were 'based on substantially the same operative facts,' the Supreme Court analogized § 1500 to res judicata (or claim preclusion), explaining that 'the principles of preclusion law [are] embodied in' § 1500." *Res. Invs., Inc. v. United States*, 785 F.3d 660, 665 (Fed. Cir. 2015) (citing *Tohono,* 563 U.S. at 316–17).  The Supreme Court explained that "even in the 19th century it was not uncommon to identify a claim for preclusion purposes based on facts rather than relief." *Tohono,* 563 U.S. at 316.  It identified two preclusion tests that existed at the time Congress enacted Section 1500.

First, the Supreme Court looked to the act or contract test: "[t]he true distinction between demands or rights of action which are single and entire, and those which are several and distinct, is, that the former immediately arise out of one and the same act or contract, and the latter out of different acts or contracts." *Tohono,* 563 U.S. at 316 (citing J. Wells, Res Adjudicata and Stare Decisis § 241, p. 208 (1878)).  Plaintiff's case in this court clearly meets this criterion.  At the time Plaintiff filed in this court seeking damages for breach of the 2004 settlement agreement, it had pending in the Third Circuit an appeal seeking to order the enforcement of that same agreement in the district court.  Thus, applying the act or contract test, Plaintiff's Third Circuit appeal was in respect to the same claim as the complaint in this court.  *Id.*; *see also Phillips/May Corp. v. United States*, 524 F.3d 1264, 1273 (Fed. Cir. 2008) (observing the "general rule that all claims arising out of the same contract constitute the same claim for purposes of res judicata").

Second, the Supreme Court identified the evidence test: "Would the same evidence support and establish both the present and the former cause of action[?]" *Tohono,* 563 U.S. at 316 (citing 2 H. Black, Law of Judgments § 726, p. 866 (1891)).  Accordingly, when determining whether two suits are for or in respect to the same claim, along with comparing both actions' facts, the court "should consider the principles of res judicata" and may utilize the preclusion tests the Supreme Court set forth in *Tohono*. *Trusted Integration, Inc.*, 659 F.3d at 1164.

The Government argues that this case and Plaintiff's 2013 Case and 2017 Case "are based on substantially the same operative facts." ECF No. 46 at 17–18; *see also* ECF No. 48 at 1.  The Government emphasizes "plaintiff acknowledges that it is seeking the same relief before another court . . . ." ECF No. 48 at 2 (citing ECF No. 47 at 8).  According to the Plaintiff, however, "there is no overlap in 'operative facts[,]'" ECF No. 47 at 8, based on the facts before the district court in the Plaintiff's 1997 and 2001 cases (Case Nos. 1997-1 & 2001-1591 (W.D. Pa)).  ECF No. 47 at 4–8.  But the Third Circuit appeal was the only pending action Plaintiff had when it filed in this court.  As explained above, that means that it is the Third Circuit appeal that this court must consider, not the other cases.

Plaintiff's Third Circuit appeal challenged the district court's denial of Plaintiff's motion for reconsideration of the consolidation and dismissal.  Notice of Appeal, *Schultz v. MSPB*, No. 14-1159 (W.D. Pa. Mar. 23, 2015), ECF No. 23.  In the underlying district court case, Plaintiff had appealed "an MSPB order . . . dismissing as untimely filed a motion to enforce an MSPB settlement agreement . . . ." Appellant's Br., *Est. of Schultz v. MSPB*, 671 F. App'x 848 (3d Cir.

9

2016) (No. 15-1730), 2015 WL 5301570 at *4.  In its appeal, Plaintiff argued the district court erred in dismissing its case and requested the Third Circuit remand the case to the district court with instructions to remand to the MSPB to provide mixed-case appeal rights to the EEOC or alternatively transfer the case to this court.  *Id.* at *5, 57.  Plaintiff effectively sought to have the settlement agreement enforced—either by this court or in the administrative proceedings.  *Id.*  While much of Plaintiff's brief focuses on jurisdictional issues and ensuring it receives EEOC appeal rights, these legal theories are irrelevant to the Section 1500 inquiry.  *Brandt*, 710 F.3d at 1374.  At the end of the day, Plaintiff's appeal sought to have the Third Circuit enforce the same settlement agreement Plaintiff states the Government breached in this case.  The operative facts underlying this claim substantially overlap with operative facts of Plaintiff's breach of settlement agreement claim in this court.

     A side-by-side comparison of Plaintiff's appeal briefing and Plaintiff's complaint in this court demonstrates that the claims are "based on substantially the same operative facts . . . ."  *Tohono*, 563 U.S. at 317.  Both recount the lengthy history of the case before the MSPB and district court, touching on the original backpay litigation, the 2004 settlement agreement, and the subsequent litigation in the MSPB and district court from 2004 to 2012.  *Compare* Appellant's Br., *Est. of Schultz*, 671 F. App'x 848, 2015 WL 5301570 at *6–19 *with* ECF No. 1 ¶¶ 5–46.  Both specifically discuss the 2004 settlement agreement's provisions preserving the Plaintiff's right to seek attorney's fees for the merits level removal work and identifying the hours related to that work.  In the appeal, Plaintiff states "the Settlement Agreement . . . granted the right to seek merits level removal fees . . . contingent upon prevailing on the removal enforcement 'timeliness' issue for the pending compliance enforcement proceedings, and receiving payment . . . ."  Appellant's Br., *Est. of Schultz*, 671 F. App'x 848, 2015 WL 5301570 at *9.  And "[t]he parties even identified those [merits level removal] hours in the Settlement Agreement."  Appellant's Reply Br., *Est. of Schultz*, 671 F. App'x 848, 2015 WL 6755340 at *2-3.  In the complaint, Plaintiff likewise details these provisions, stating:

> Plaintiff and the USPS worked to identify the attorney hours for work on the 'removal' using a methodology for work on briefs and petitions, that allowed certain hours, and using the same allocation methodology to permanently disallow many other hours, and deferred the removal hours . . . .  In the Settlement, Plaintiff was granted the right to seek the merits level removal fees contingent upon prevailing on the same "timeliness" issue raised by the USPS and receiving payment for removal backpay . . . .

ECF No. 1 ¶¶ 16, 20.

     Both actions also allege the Government breached the settlement agreement by objecting to Plaintiff filing fee petitions for work on the same litigation matter, which prevented Plaintiff from recovering attorney's fees.  In the appeal, Plaintiff argues: "[t]he USPS never responded to the requests to engage in good faith negotiation contemplated under the Settlement Agreement, and *breached that Agreement* by blocking Appellant's right to seek fees, whereupon Appellant on August 25, 2010 filed a specific 'Motion to Enforce Settlement Agreement' . . . ."

10

Appellant's Br., *Est. of Schultz*, 671 F. App'x 848, 2015 WL 5301570 at *11 (emphasis added).[3] In its complaint here, Plaintiff argues the USPS breached the agreement: 1) when it "objected to and did not permit Plaintiff to 'file another petition for enforcement solely on this issue, and the issue of fees and costs for work on this enforcement proceeding'" and 2) when "the USPS objected to and did not permit Plaintiff to file and pursue an MSPB petition for fees and petition for enforcement to enforce the Settlement Agreement." ECF No. 1 ¶¶ 49, 51. In other words, both cases are premised on the same objection to Plaintiff filing a fee petition before the MSPB.

Moreover, in its complaint, Plaintiff acknowledges that the two cases are directly related and admits that the then-pending appeal in the Third Circuit could materially reduce the amount of money damages recoverable in this court. The Complaint states:

> Litigation is currently pending at the U.S. Merit Systems Protection Board as a result of a district court ordered remand, and the U.S. Third Circuit Court of Appeals that could materially reduce the amount of money damages Plaintiff may recover if recovery is achieved as a result of proceedings in these tribunals. Plaintiff would be willing to stay this proceeding pending the ultimate outcome of the above referenced litigation.

ECF No. 1 at 8–9. If the litigation then-pending at the Third Circuit could materially impact Plaintiff's case here, there is surely substantial factual overlap between the two cases.

Clearly the operative facts of the two suits overlap—enough that the two claims are for or in respect to the same claim for Section 1500 purposes. And while the appeal concerned a motion to enforce the settlement agreement, and the complaint concerns an alleged breach of the settlement agreement, under *Tohono*, the relief sought is irrelevant to whether the claims are the considered related. *Tohono*, 563 U.S. at 313–14. In the end, both cases are based on the same contract and the same alleged breaches of that common contract. Admittedly, there are also some factual differences between the two suits. Mainly, the appeal briefing focuses in large part on the consolidation of the 2013 and 2014 Cases and the actions of the MSPB, USPS, and district court leading up to the consolidation, while this case does not. While some factual differences such as these may exist, they are of no real consequence here because Section 1500 "bars not only identical but also related claims." *Tohono*, 563 U.S. at 314.

Plaintiff attempts to avoid Section 1500 and *Tohono* by arguing "this case is distinguishable from *United States v. Tohono O'Odham Nation*" because Plaintiff has "always litigated sequentially, and not concurrently . . . ." ECF No. 47 at 8. But that argument does not survive *Tohono*'s text. According to *Tohono*, the Plaintiff had a choice: it could have dismissed the other court litigation and then filed here, or it could have waited until the other court litigation concluded and then filed in this court "if the statute of limitations [was] no bar."

---

[3] Additionally of note, in the appeal briefing, the Government argued the motion to enforce the settlement agreement at issue was "identical to the breach of settlement agreement claim added to *Schultz I* [Case No. 13-1363 (W.D. Pa)]" Br. for Resp't, *Est. of Schultz*, 671 F. App'x 848, 2015 WL 5915634 at *7.

11

*Tohono*, 563 U.S. at 318.  What Plaintiff could not do was file here while the litigation remained pending in the Third Circuit.

## IV.     Conclusion

Because Plaintiff's appeal to the Third Circuit was pending when Plaintiff filed this action, and this case is based on the same contract and the same set of operative facts as the Third Circuit action, Section 1500 removes jurisdiction from this court.  *Brandt*, 710 F.3d at 1374.

Therefore, the court denies the Plaintiff's motion to disqualify the Department of Justice, ECF No. 50, and grants the Government's motion to dismiss, ECF No. 46.  The Clerk's Office is directed to enter judgment accordingly.

It is so ORDERED.

s/Edward H. Meyers  
Edward H. Meyers  
Judge